UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BSR LAMBERT, LLC<br><br>   Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.<br><br>   Defendant. | Civil Action No. _____ (___) |

**COMPLAINT FOR BREACH OF CONTRACT**

BSR Lambert, LLC ("Plaintiff" and/or "BSR") by and through the undersigned attorneys, brings this complaint against Defendant American Airlines, Inc. ("Defendant" and/or "American"), and alleges as follows:

**INTRODUCTION**

1. BSR entered into a contract with American to provide snow removal services at the St. Louis Airport. BSR performed snow removal services for American and invoiced American according the contract. American has never complained about the quality of the snow removal services provided by BSR. Because there were more weather events than American anticipated, the invoiced amounts were higher than American expected and American refused to pay what it had agreed. BSR has been forced to file this suit seeking the payment for the services it rendered under the parties' contract.

**PARTIES**

2. BSR Lambert, LLC is a Missouri Limited Liability Company with its principal place of business at 2451 Schuetz, Maryland Heights, MO 63403. The sole member of BSR Lambert is Carl A. Bolm, Trustee or his successor in trust, under the Carl A. Bohm Living Trust

dated February 19, 1996 and Mr. Bolm, the Trustee, is a citizen of Missouri and his permanent domicile is 15 Huntleigh Woods Drive, St. Louis, MO 63131.

3. American Airlines, Inc. is a Delaware Corporation with a principal place of business of 1 Skyview Drive, Fort Worth, Texas 76155. American is registered in the State of Texas as foreign for-profit corporation and can be served pursuant to Federal Rule of Civil Procedure 4(h)(1)(B) by serving a copy of the summons and this Complaint on its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, TX 78701-3136 USA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because diversity of citizenship exists between the parties and the amount in controversy, exclusive of interest, exceeds $75,000.00.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (c)(2) because Defendant is subject to personal jurisdiction in this judicial district and is therefore deemed to reside in this judicial district.

6. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in the State of Texas, and Defendant is a national airline company that offers services throughout the State of Texas. Additionally, Plaintiff's claims arise from the parties' General Terms Agreement dated November 22, 2023, which contains a forum selection clause requiring that any dispute arising from the General Terms Agreement shall be brought in the district court of the state of Texas, Tarrant County or the Northern District of Texas-Fort Worth Division. *See* Ex. 1, Agreement § 24.

7. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is located in this district and because in Section 24 of the

General Terms Agreement Defendant has consented to the exclusive jurisdiction of either the state or federal courts of this district for the adjudication of any claims arising from the Agreement. *See* Ex. 1, § 24.

## STATEMENT OF FACTS

### A. BSR is an Expert in Ice and Snow Management Services.

8. BSR is a professional ice and snow management services company that specializes in providing world-class reliable services to handle winter weather events (snow, ice, freezing rain, hail, sleet, and arctic temperatures). BSR provides a comprehensive snow-safety approach that combines specialized equipment and exceptional customer service to avoid accidents and injuries while providing snow and ice management services. While providing these services, BSR maintains the highest industry standards and is recognized with multiple industry certifications.

### B. BSR Contracts with American to Remove Snow at the St. Louis Airport.

9. Effective as of November 10, 2023, BSR entered into a contract with American to provide snow removal services to American at the St. Louis Airport ("STL"). *See* Ex. 1. The contract includes a General Terms Agreement ("Agreement"), which provides the general outline of the parties' agreement. The specifics of terms and prices are included in an Exhibit A, Pricing and Term Sheet for Snow Removal Services at STL ("Exhibit A"), which was executed at the same time as the Agreement and is expressly incorporated into the Agreement. *See* Ex. 1, Agreement § 1(b).

10. Under the Agreement, after delivering its snow removal services, BSR "shall submit to American an invoice for such Services or Products to the address identified in . . . Exhibit A." Agreement § 3(a). American agreed to pay BSR "within forty-five (45) days following submittal of each properly documented invoice." *Id.* Exhibit A had the same requirements.

11. BSR agreed to provide American an "invoice for all Services rendered at [STL] for such month" after providing snow removal services. Ex. 1, Exhibit A § 10(a). American "shall pay all amounts due, no later than forty-five (45) days after receipt of [BSR's] invoice. Ex. 1, Exhibit A § 10(c).

12. The Agreement required that American endeavor to dispute any BSR invoice within fifteen (15) business days and that American "will submit payment for all undisputed amounts." Ex. 1, Agreement § 3(b). Thus, American **explicitly** and **unambiguously** agreed to pay all undisputed amounts invoiced by BSR for the services BSR rendered. Indeed, the Agreement specifically clarified that the word "will" should be interpreted as an "expression[] of command, not merely expression[] of future intent or expectation." Ex. 1, Agreement § 30(e).

13. Exhibit A contains detailed information about the agreed pricing structure. BSR agreed to provide American snow removal services for a term of five years, beginning effective November 10, 2023. *See* Ex. 1, Exhibit A § 1(a)(i), 3. American agreed to pay for BSR's services in accordance with the pricing schedule. Ex. 1, Exhibit A, § 2. BSR agreed that the pricing was "fully inclusive" of all costs. *Id.*

14. The Section 2(a) pricing contains three components. The first is a mobilization charge that is paid in two installments, one at the beginning of the winter season and one toward the end of the winter season as set forth in the first two rows of the chart below:

**Individual Charges**

| | |
|---|---|
| Mobilization Installment 1 and Contribution to Insurance Costs (Invoiced Nov 1)** | $15,000.00+$12,342 = $27,342.00 |
| Mobilization Installment 2 (Invoiced April 1)** | $15,000.00 |
| Service Mobilization Charge*** | $6,400.00 |

Ex. 1, Exhibit A § 2(a) at A-2

4

The second is an insurance charge to reimburse BSR for the insurance that American required BSR to obtain. That component is reflected in the first line of the chart above, along with the first installment of the mobilization charge. The final component is a Service Mobilization Charge in respect to each weather event. *Id.* The Service Mobilization Charge included the following definition:

> ***A Service Mobilization Charge will be guaranteed and accepted by American for the mobilization of all assets for each service period. For the sake of clarity, BSR Services, Inc., mobilizes assets to the station due to a service need, American Airlines will be billed per Section 2 a) above. Hours incurred in excess of four hours will be billed above and beyond the service mobilization charge according to the hourly rates set forth in Section 2 a) *Pricing Schedule* above.

Ex. 1, Exhibit A § 2(a) at A-2

Thus, when BSR "mobilizes assets due to a service need," i.e., there is a winter weather event requiring services from BSR under the Agreement, American agreed to pay a Service Mobilization Charge at a rate of $6,400 rate for four hours of work ($1,600 per hour) with a minimum four-hour charge. Ex. 1, Exhibit A § 2(a) at A-2.

15. BSR was required to keep all equipment necessary to perform the services for American at the STL airport and to reserve that equipment for the exclusive purpose of servicing the contract with American. Ex. 1, Exhibit A, § 2(d), 9. In order for such an arrangement to be financially feasible, BSR typically either requires mobilization payments and an hourly charge for the use of all equipment similar to the one described above or charges a monthly rental fee for the equipment. BSR offered both options to American in the negotiation of the Agreement, and American chose the pricing structure described above. This pricing structure generally benefits the customer if there are few winter weather events and benefits the service provider if there are more winter weather events. Consequently, American chose a pricing structure that would benefit it if there were few winter weather events.

5

16. The Agreement also contains an attorneys' fees provision which provides that "[i]n the event of any litigation between the Parties concerning this Agreement, the prevailing party shall be awarded and paid all of its reasonable attorney's fees and costs incurred in connection with such litigation including investigation costs." Ex. 1, Agreement § 10(b).

### C. BSR Provides Snow and Ice Removal Services.

17. In January and February of 2024, the St. Louis region experienced numerous weather events that caused snow, freezing rain and freezing temperatures at the STL airport. BSR timely and safely provided ice and snow removal services that allowed American's planes to safely maneuver despite the weather conditions. BSR sent American invoices seeking payment from American for the services it provided. American refused to pay. Each of these invoices is detailed below:

   i. *Event 1: January 5, 2024–January 10, 2024*

18. From January 5, 2024 to January 10, 2024, a storm system impacted the St. Louis region over several days. STL experienced moderate to heavy snow followed by waves of wintery precipitation. On January 6, 2024, BSR treated surfaces as needed to address accumulating snowfall. On January 9, 2024 BSR applied chemicals as needed for safe departures. On January 12, 2024, BSR created a $13,600 invoice for these services. *See* Ex. 2.

19. This invoice was submitted to American on January 17, 2024. American did not dispute this invoice within fifteen business days. Nor did American pay this invoice within forty-five days.

   ii. *Event 2: January 12, 2024–January 17, 2024*

20. From January 12, 2024 to January 17, 2024, another multiple-day storm system impacted the St. Louis region, bringing a mix of wintry precipitation and single digit temperatures. The STL airport experienced rain, snow and freezing temperatures throughout the five-day period.

On January 12, 2024, BSR applied chemicals as needed for the Friday close of business. On January 13, 2024, BSR was onsite at the STL airport overnight, monitoring, clearing, and treating surfaces as needed for all night and weekend flights. On January 14, 2024, BSR applied chemicals to all surfaces. On January 15, 2024, BSR worked overnight to clear surfaces as needed and applied chemicals to all surfaces due to accumulating snow. On January 16, 2024, BSR applied chemicals and cleared surfaces as needed due to extreme low temperatures. On January 17, 2024, BSR applied chemicals as needed to address refreezing conditions. On January 24, 2024, BSR created a $193,600 invoice seeking payment for these services. *See* Ex. 3.

21. This invoice was submitted to American on January 26, 2024. American did not dispute this invoice within fifteen business days. Nor did American pay this invoice within forty-five days.

        iii.    *Event 3: January 18, 2024–January 24, 2024*

22. From January 18, 2024 to January 24, 2024, the St. Louis region experienced another multi-day storm that brought snow, low temperatures, and freezing rain. The STL airport had light snow, and then freezing rain caused a glaze on all surfaces. On January 19, 2024, BSR worked overnight to apply chemicals to all surfaces prior to the onset of the storm. On January 22, 2024, BSR applied chemicals to all surfaces due to the threat of freezing rain on all surfaces to ensure the surfaces were safe for arriving and departing planes. On January 31, 2024, BSR created a $140,800 invoice for these services. *See* Ex. 4.

23. This invoice was submitted to American on January 31, 2024. American did not dispute this invoice within fifteen business days. Nor did American pay this invoice within forty-five days.

24. On February 12, 2024, because BSR had not received payment for any of the three invoices, BSR contacted American to inquire about when payment might be received and asked if

the invoices had been correctly submitted. American did not dispute the invoices or ask for additional detail.

      iv.    *Event 4: February 16–February 19, 2024*

25. From February 16, 2024 to February 19, 2024, St. Louis had a quickly hitting and intense snow and sleet storm. At the STL airport, bands of heavy snow resulted in several inches of accumulating snow. On February 16, 2024 and February 17, 2024, BSR applied chemicals and cleared surfaces due to accumulating snow. On February 28, 2024, BSR created and submitted to American a $112,000 invoice for these services. *See* Ex. 5.

26. On March 5, 2024, BSR reached out to American again to check on payment. This time American responded and American assured BSR that payment was forthcoming, stating that BSR "should be seeing payments soon." However, as with the previous invoices, American did not pay this invoice within forty-five days. Nor did American dispute this invoice within fifteen business days.

      vi.    *Total Due*

27. BSR performed valuable services for American. BSR sent American invoices as required under the Agreement. American did not dispute the invoices. American did not pay the invoices.

28. The table below summarizes each of these invoices and the amounts due.

| **SUMMARY OF AMOUNT DUE** | | |
|---|---|---|
| Type of Invoice | Date Invoice Submitted | Amount Due |
| **Event 1** | 1/17/2024 | $13,600 |
| **Event 2** | 1/26/2024 | $193,600 |

| Event 3 | 1/31/2024 | $140,800 |
| --- | --- | --- |
| Event 4 | 2/28/2024 | $112,000 |
| Total Due to BSR | | $460,000 |

29.     Even though American agreed to pay the amounts above, American now refuses to pay. BSR seeks payment of the amounts it is owed under the Agreement.

## COUNT I
### Breach of Contract

30.     Plaintiff fully incorporates and realleges the foregoing allegations as if fully stated herein.

31.     Plaintiff and Defendant entered into valid and enforceable contract, the Agreement which includes Exhibit A, Pricing and Term Sheet for Snow Removal Services at STL.

32.     Plaintiff performed all conditions precedent and performed and/or were excused from performing the contract. Specifically, Plaintiff mobilized and dedicated equipment at the St. Louis Airport specifically for Defendant and performed snow and ice removal services at the St. Louis Airport for Defendant for four specific weather events (1) January 5, 2024–January 10, 2024; (2) January 12, 2024–January 17, 2024; (3) January 18, 2024–January 24, 2024; (4) February 16–February 19, 2024. Plaintiff sent Defendant invoices seeking payment for these four weather Events and for the Mobilization Installment 2.

33.     Defendant materially breached the Agreement by failing to pay the amounts due.

34.     Defendant's breach of the Agreement has caused Plaintiff damage in amounts exceeding the jurisdictional limits of the court, specifically in the amount of $460,000.

35. Accordingly, Plaintiff is entitled to judgment against Defendant in an amount to be determined at trial, plus all interest and costs as allowed by law, including but not limited to attorneys' fees.

### ATTORNEYS' FEES

36. Plaintiff fully incorporates and realleges the foregoing allegations as if fully stated herein.

37. Plaintiff has incurred reasonable and necessary attorneys' fees in pursuit of its claim asserted herein. Accordingly, Plaintiff is entitled to recover its attorneys' fees under Texas Civil Practice and Remedies Code Section 38.002 and the Agreement. Plaintiff has presented the claim to Defendant, and payment for the just amount owed has not have been tendered before the expiration of the 30th day after the claim was presented.

38. All conditions precedent and presentment requirements have been satisfied or will be satisfied before trial.

### CONDITIONS PRECEDENT

39. Plaintiff fully incorporates and realleges the foregoing allegations as if fully stated herein.

40. All conditions precedent to Plaintiff's claims have occurred or are excused or waived.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief and judgment against Defendant as follows:

A. For the reasons stated above, Plaintiff respectfully requests that Defendants be cited and ordered to appear and answer herein;

B. Plaintiff respectfully requests that this Court enter judgment in its favor in the amount of $460,000 and issue the declarations described herein, along with attorneys' fees, pre-

judgment interest and post-judgment interest, and court costs. Plaintiff further requests all other legal and equitable relief to which Plaintiff may be justly entitled through this Complaint and any subsequent proper amendment thereto.

Date:   September 16, 2024

Respectfully submitted,

/s/ *Chris Akin*
Christopher J. Akin
Texas Bar No. 00793237
caking@lynnllp.com
Holly D. Stubbs
Texas Bar No. 24113496
hstubbs@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

**ATTORNEYS FOR PLAINTIFF
BSR LAMBERT, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all CM/ECF participants. Defendant will also be served through formal process or any agreement to accept service.

/s/ *Chris Akin*
Chris Akin

4854-8155-5941, v. 1